SALT LAKE HARDWARE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 46911, 56901.   Promulgated December 30, 1932.

*Paul E. Shorb, Esq.*, and *Harold C. Anderson, C. P. A.*, for the petitioner.

*Frank B. Schlosser, Esq.*, for the respondent.

OPINION.

Marquette: The petitioner contends that the payment to it of $60,000 in 1926 and of $40,000 in 1927, in redemption of preferred stock issued as dividends, was "essentially equivalent to the distribution of taxable dividends" under section 201 (g) of the Revenue Act of 1926. If that contention is correct, then such dividends are not taxable income to the petitioner by virtue of section 234 (a) (6) of the act.

The respondent takes the position that, as dividends received by a corporation are not taxable as such, therefore the term "taxable dividend" as used in section 201 (g) was not intended to apply to corporate stockholders. Respondent further contends that the pay-

ments in question constitute "amounts distributed in partial liquidation" under section 201 (c) and (h) of the Revenue Act of 1926.

The statutes in question, so far as here applicable, read as follows:

Sec. 201. (c) \* \* \* amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 202 \* \* \*.

Sec. 201. (h) As used in this section the term "amounts distributed in partial liquidation" means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock.

Sec. 201. (g) If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend. \* \* \*

Not all dividend distributions come within the purview of the section quoted. It applies only to "taxable dividends," that is, such dividends as are subject to income tax. It can not apply in the case before us, for the reason that both petitioner and the Strevell-Paterson Hardware Company are domestic corporations and dividends received by one from the other are not taxable, under section 234 (a) (6) of the Revenue Act of 1926.

Petitioner argues that, as there was never any intention to liquidate the Strevell-Paterson Company, payments by that company in redemption of part of its stock can not be considered as a partial liquidation under section 201 (c) and (h), *supra*. That argument can have persuasive force only by using the word "liquidation" in the sense of winding up the affairs of the company. Admittedly, that is the usual meaning given to the word. But here we can not ignore the fact that Congress has established a different meaning for income tax purposes. As set forth in the statute, section 201, *supra*, a partial liquidation takes place whenever a corporation distributes money or assets in complete cancellation or redemption of a part of its capital stock. No particular portion is mentioned, nor is the word "part" in any way limited. Whether the amount so redeemed be all of a series or class, or only a part thereof, apparently makes no difference under the definition adopted by Congress. Subdivision (h) is supplemental to subdivision (c) of section 201, which provides that amounts so distributed are to be considered as payments in exchange for the stock, upon which gain or loss to the stockholder is to be determined. It is our opinion that the payments here involved

constitute distributions in partial liquidation within the meaning of the Revenue Act of 1926. What, then, is the proper basis upon which to determine the amount of gain or loss resulting from those transactions?

Section 204 (a) of the Revenue Act of 1926 provides:

The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property, * * *

Then follow a number of exceptions, none of which apply here. Subdivision (b) of the section reads:

The basis for determining the gain or loss from the sale or other disposition of property acquired before March 1, 1913, shall be (A) the cost of such property * * * or (B) the fair market value of such property as of March 1, 1913, whichever is greater. * * *

The parties agree that the fair market value as of March 1, 1913, is the proper basis for determining gain or loss. Respondent has taken the book value of the common stock as of March 1, 1913, as being the fair market value on that date. Although good will does not appear on the books as an asset item, respondent has considered it in his computations to the extent of offsetting probable shrinkage of asset values in the event of dissolution. Petitioner does not challenge the accuracy of the computations, but insists that the method is wrong and that Strevell-Paterson Company preferred stock, if issued March 1, 1913, would have been worth par on the market. To support that contention several witnesses testified that in their opinions the preferred stock would have been worth par if issued March 1, 1913. All of those witnesses, except two, are or have been officers of either the petitioner or the Strevell-Paterson Company. The other two were experienced bankers in Salt Lake City, but their opinions were in response to hypothetical questions which did not include any detail of assets nor of accounts respecting their fluid condition. With all due respect to their opinions, we do not consider them sufficient, under the circumstances, to overthrow the presumption that respondent's determination is correct. But we are not impressed with his argument that the basic value of the preferred stock should be further depressed by using the surplus of December 31, 1916, and of December 31, 1919, to increase the value of the common stock. We therefore sustain that determination as set forth in the deficiency notices.

Reviewed by the Board.

*Decision will be entered for the respondent.*