BENJAMIN R. BRITT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 91568. Promulgated October 24, 1939.

*Robert A. Littleton, Esq.*, for the petitioner.
*D. D. Smith, Esq.*, for the respondent.

OPINION.

LEECH: The first question involves the proper basis for computing petitioner's gain on the redemption of the United Carbon Co. stock held by him. The transactions, as a result of which petitioner acquired this stock, appear in the findings of fact. In a proceeding brought by United Carbon Co. to redetermine deficiencies in its income tax for 1925, the Circuit Court of Appeals, reversing the Board's decision at 32 B. T. A. 1000, held that no reorganization had occurred within section 203 (b) (4) of the Revenue Act of 1926 by reason of these same transactions. *United Carbon Co.* v. *Commissioner*, 90 Fed. (2d) 43. This decision resulted from the court's view that, since the values of the shares of certain of the transferors before the exchange differed substantially from the respective values of the stock received from United Carbon Co. in the exchange, the condition of section 203 (b) (4) of the Revenue Act of 1926[1] had not been met.

Although alternative grounds for holding that a statutory reorganization had resulted were urged before the Board and by it were disregarded because of the conclusion it reached (see 32 B. T. A. 1000, 1008), the Commissioner abandoned these·alternative grounds on appeal, and the Circuit Court confined itself to the question there presented. Since *res judicata* has not been pleaded by petitioner here, we can not even consider whether the *United Carbon Co.* case is decisive of all questions that might have been raised. *Baker* v. *Spokane Savings Bank*, 71 Fed. (2d) 487; *Murrell* v. *Stock Growers' National Bank of Cheyenne*, 74 Fed. (2d) 827; *Reserve Natural Gas Co. of Louisiana*, 15 B. T. A. 951.

The *United Carbon Co.* case, then, stands for the proposition that the transactions engaged in, during 1925, by Liberty Carbon Co., 11 corporations and a partnership, on one hand, and United Carbon Co.,

---

[1] SEC. 203 (b)(4). No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange.

on the other, did not constitute a reorganization within section 203 (b) (4) of the Revenue Act of 1926. We now consider whether there was a reorganization under other sections of the 1926 Act, to wit, section 203 (b) (3) and section 203 (h) (1) (A). If petitioner acquired his stock in United Carbon Co. as a result of such a reorganization, then its basis will be the same as in that of the property exchanged therefor. The basis of the preferred stock, thus received, will be the allocated cost of the Liberty Carbon Co. stock exchanged therefor, rather than the fair market value of the Liberty Carbon stock on the date of the exchange. Revenue Act of 1926, sec. 204 (a) (6).

Attacking this point, petitioner argues that the condition of section 203 (h) (1) (A)[2] has not been met for the reason that United Carbon Co. did not acquire "substantially all" the properties of Liberty Carbon Co. in exchange for stock. It is argued that while assets of a cost of $213,856.02 were exchanged for stock, other assets costing $105,017.38 were retained by Liberty Carbon Co. However, the record shows that, of the assets not transferred for stock, inventory valued at $79,539.43 was transferred to United Carbon Co. for cash. In other words, Liberty Carbon Co. parted with approximately 92 percent of its property in exchange for stock and cash.

Such a percentage is high enough to satisfy the statute. *Gross* v. *Commissioner*, 88 Fed. (2d) 567; *Milton Smith*, 34 B. T. A. 702.

Petitioner, however, contends, in effect, that we must segregate the transaction into two parts—the transfer of property, costing $213,-856.02, in exchange for stock; and the transfer of inventory, costing $79,539.43, for $79,539.43 in cash. There is no merit in this position. In *Helvering* v. *Minnesota Tea Co.*, 296 U. S. 378, the taxpayer transferred all of its assets to a corporation in exchange for 18,000 shares of the transferee's stock and $426,000 in cash. In holding that a reorganization had resulted under section 112 (i) (1) (A) of the Revenue Act of 1928 (worded identically with section 203 (h) (1) (A) in the 1926 Act), the Court said:

> *   *   *   Also, a large part of the consideration was cash. This, we think, is permissible so long as the taxpayer reserved an interest in the affairs of the transferee which represented a material part of the value of the transferred assets.

There can be no question but that the interest received by Liberty Carbon Co. in United Carbon Co. represented a "material part" of the value of the transferred assets. By a simple calculation, it is seen that the United Carbon stock received by Liberty Carbon Co. in the

---

[2] SEC. 203 (h)(1). The term "reorganization" means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation) * * *.

exchange here represented at least 73 percent of the value of the Liberty Carbon assets transferred. That percentage constituted a "material" part of the value of those transferred assets. *G. & K. Manufacturing Co.* v. *Helvering*, 296 U. S. 389; *Nelson Co.* v. *Helvering*, 296 U. S. 374; *Millicent Turle Roelker*, 39 B. T. A. 967.

We conclude that a statutory reorganization resulted, under sections 203 (b) (3) and 203 (h) (1) (A) of the 1926 Act, when Liberty Carbon Co. transferred 92 percent of its assets to United Carbon Co. in exchange for stock and cash.

In view of our conclusion that the first issue must be resolved against petitioner, we do not need to consider the affirmative defense of estoppel raised in respondent's answer.

There remains to be decided the question of whether the gain realized by petitioner on the redemption of his preferred stock by United Carbon Co. in 1934 is taxable to the extent of 40 percent on the theory that it resulted from the sale of a capital asset held for more than 5 but less than 10 years or whether it is taxable, in full, as a distribution in partial liquidation. Revenue Act of 1934, sec. 115 (c).

Petitioner urges that since $110 per share was the price paid, the stock could not have been reacquired by the company in liquidation, dissolution, or winding up, because paragraph (e) of the provisions on the back of the certificates mentioned $107 as the per share price to be paid in that event. The price of $110, he contends, was paid pursuant to paragraph (b), and indicates a straight purchase. If this be the case, he argues, *William A. Smith*, 38 B. T. A. 317, is controlling.

But, in the *Smith* case, all the elements of a sale were present. The reacquired stock was not retired, but was held in the treasury of the corporation subject to reissuance. The last sentence of paragraph (b) of the stock certificates, involved here, provides that preferred stock purchased or redeemed or discharged shall not be reissued. The redemption, in other words, was to be complete. It is proper to presume, therefore, that that procedure was followed when petitioner's stock was reacquired in 1934. *United States Bank* v. *Dandridge*, 12 Wheat. 64. This factual distinction prevents, in our opinion, the application of the *Smith* case here.

Section 115 (i) of the Revenue Act of 1934 defines "amounts distributed in partial liquidation" to mean "a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock." To be a partial liquidation it is not necessary that the corporation be planning a cessation of busi-

ness or be in the process of final liquidation or that all of the preferred stock be retired at once. *Commissioner* v. *Quackenbos*, 78 Fed. (2d) 156; *Commissioner* v. *Cordingley*, 78 Fed. (2d) 118. In *Salt Lake Hardware Co.*, 27 B. T. A. 482, holding that amounts paid to redeem outstanding preferred stock constituted amounts distributed in partial liquidation, the Board said: "As set forth in the statute, section 201, *supra*, [the counterpart of section 115 (i) in the 1934 Act], a partial liquidation takes place whenever a corporation distributes money or assets in complete cancellation or redemption of a part of its capital stock. No particular portion is mentioned, nor is the the word 'part' in any way limited. Whether the amount so redeemed be all of a series or class, or only a part thereof, apparently makes no difference under the definition adopted by Congress." See also *Dill Manufacturing Co.*, 39 B. T. A. 1023.

Petitioner further contends that United Carbon Co. redeemed this stock out of profits, rather than capital, and that section 115 of the 1934 Act deals only with distributions which effect a change in the capital structure of the corporation. Implicit in this is the view that a distribution of profits can not be a partial liquidation. The decision of the Supreme Court in *Helvering* v. *Chester N. Weaver Co.*, 305 U. S. 293, concludes the petitioner in that position. This cancellation of this stock did reduce its capital. When United Carbon Co. reacquired its stock, it canceled it, and could not reissue the shares acquired.

Petitioner also intimates that United Carbon Co. was obligated to acquire the stock by the contract appearing on the back of each stock certificate, and that a compliance with this obligation was not a liquidation of the stock. The factual premise is not correct. But even if it were, the conclusion that the acquisition and cancellation of this stock was a partial liquidation, would still follow. *Chester A. Souther*, 39 B. T. A. 197.

Thus, since the money paid for the stock constituted a distribution in partial liquidation, it follows that 100 percent of the gain realized by petitioner from the redemption of his preferred stock in 1934 is taxable. Revenue Act of 1934, sec. 115 (c). *Helvering* v. *Chester N. Weaver Co.*, *supra*. As previously indicated, this gain is equivalent to the difference between the amount received for the stock in 1934 and the allocated cost of the Liberty Carbon Co. stock exchanged therefor in 1929.

*Decision will be entered under Rule 50.*