Henry M. Johnson v. Commissioner.
Johnson v. Commissioner
Docket No. 1026.
United States Tax Court
1944 Tax Ct. Memo LEXIS 124; 3 T.C.M. (CCH) 930; T.C.M. (RIA) 44290; September 11, 1944
*124 John Leekley, Esq., 757 N. Broadway, Milwaukee, Wis., for the petitioner. Carroll Walker, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency in petitioner's' income tax for the calendar year 1940, in the amount of $3,672.84. Petitioner concedes the correctness of certain minor adjustments, but challenges the correctness of the determination to the extent of $3,655.39 of the deficiency, on the ground that the disputed item of income constituted consideration for the sale of a capital asset, taxable to the extent provided by section 117 of the Internal Revenue Code, rather than, as respondent contends, a distribution in partial liquidation, taxable pursuant to section 115 (c). The facts were stipulated in part, and, as so stipulated are adopted and incorporated in our findings of fact. Findings of Fact Petitioner filed his income tax return for 1940 with the collector of internal revenue for the district of Wisconsin. For some years prior to August 19, 1940, he was a stockholder of Griffith-Hope Co., a Wisconsin corporation, whose articles of incorporation contained the following provision: "Section 1. If at any time *125 any of the stockholders of this corporation desire to sell and dispose of their stock, said stockholder or stockholders shall first offer it in writing to the Board of Directors, stating price and terms, and give the Board of Directors ten days in which to purchase it for the Griffith-Hope Company, or to place it with the stockholders. In the event that more than one stockholder desires to purchase said stock at said terms, each stockholder shall be entitled to buy in the proportion of his stock ownership at that time. At the expiration of fifteen days, if no one has purchased and settled for the same, said stockholder or stockholders shall have the right to sell only within the next 15 days to whoever will purchase upon the same terms and the price for which it was offered to the Board of Directors, or at a higher price, but not otherwise." On August 8, 1940, petition executed and delivered to Griffith-Hope Co. a document reading as follows: "OPTION ON STOCK "In consideration of the payment of Five Dollars ($5.00) the receipt whereof is hereby acknowledged, Henry M. Johnson hereby agrees to sell to Griffith-Hope Co., a corporation organized under the laws of the State of Wisconsin *126 and located at West Allis, Wisconsin, One Hundred Seven and Seven-Tenths (107-7/10) shares of the common stock of Griffith-Hope Co. at book value plus ten per cent (at time of sale) per share at any time within sixty (60) days of date. "IN WITNESS WHEREOF the said Henry M. Johnson has hereunto set his hand and seal the 8th day of August, 1940. "(SIGNED By) Henry M. Johnson SEAL" On August 8, 1940, the board of directors of Griffith-Hope Co., adopted a resolution reading as follows: "WHEREAS, Henry M. Johnson is unable to continue in active employment of the Griffith-Hope Company, and is desirous of selling the One Hundred Seven and Seven-Tenths (107.7) shares of the Griffith-Hope Company Common Stock which he owns, and has accordingly given Griffith-Hope Company an option to purchase all of said stock at book value plus 10% at time of sale, per share. "AND, WHEREAS, it is the opinion of the Board of Directors that the Griffith-Hope Company is well able to safely finance the purchase of such stock. "THEREFORE, BE IT RESOLVED, That Griffith-Hope Company exercise said option and purchase from Henry M. Johnson said One Hundred Seven and Seven-Tenths (107.7) shares of Griffith-Hope *127 Company Common Stock at book value plus 10% at time of sale, per share, the determination of book value to be arrived at by deducting a proportion of the income taxes payable on the 1940 profits, said corporation to be the ratio of the profits to the date of sale as against the profits for the whole year, and "BE IT FURTHER RESOLVED, That S. N. Hope, President, be and he is hereby directed to do everything necessary to carry into effect the foregoing resolution, including the taking of any steps necessary to get the consent and approval of stockholders to said purchase and including the making of any loans necessary to make the payments required in said purchase." On August 9, 1940, the President, S. N. Hope, of Griffith-Hope Co. wrote to each of the stockholders of Griffith-Hope Co. a letter, copy of which is as follows: "I regret to announce that Mr. Henry M. Johnson, who has been the Secretary-Treasurer of Griffith-Hope Co. for many years, is unable because of his health to continue with the company, wants to dispose of his stock, and he has given Griffith-Hope Co. an option to purchase all the stock of Griffith-Hope Co. which he owns, at book value plus 10%. The Board of Directors *128 in a meeting on August 8, 1940, voted unanimously to purchase all of said stock at said price. "Under the Articles and By-Laws of the corporation, each stockholder has the right to purchase a proportionate share of any stock offered for sale. However, if the corporation itself buys this stock, every stockholder of Griffith-Hope Co. is in fact proportionately sharing in the purchase just as though each stockholder purchased his proportionate share. The only difference is that the corporation pays for the stock in one case and the individual in the other. "The Board of Directors believes that the corporation can safely finance the purchase of this stock and that the fine dividend record of the company will not be materially affected. "The Board of Directors wants to consummate the purchase of Mr. Johnson's stock at once, and would like your consent. Therefore, will you kindly sign and return your waiver, consent and approval without delay. All the directors and I have already signed a similar approval and I am enclosing a stamped envelope and form for your signature before one witness. Will you sign in the exact manner in which your name is typed under the line for your signature." *129 Pursuant to the foregoing letter of August 9, 1940, Griffith-Hope Co. obtained waivers and consents from all of the other stockholders to enter into the transaction with petitioner and thereupon, on August 19, 1940, petitioner delivered to Griffith-Hope Co. his 107.7 shares of common stock of that Company, and coincident with such delivery received a check of Griffith-Hope Co. in the amount of $36,787.29. For the purpose of consummating the transaction, the corporation borrowed $20,000 from its bank, which, together with other cash funds of the company, was used to pay the amount received by petitioner. The books and records of the company were in the charge of Leo C. Lamczyk, who was also a director of the corporation. Acting on his own initiative and without other authority of any kind from the corporation, he entered the transaction on the books of the corporation "as of" August 19, 1940, by debiting the "Common Stock Issued" account with $10,770 (the par value of the stock) and the balance of $26,017.29 to surplus. He then wrote on the face of the transferred certificate the notation "Cancelled - 8/19/40 - stock retired." There is no account in the company's books reflecting *130 treasury stock. He made the entries in the manner outlined because it seemed to him the easiest way to handle it. The authorized capital of the corporation, at the time of the transaction, was 500 shares of a par value of $100 per share, of which 361.6 had been issued. In September 1940 twelve shares of its common stock were sold by the corporation to one of its stockholders for $4,000. On March 6, 1941, at the first annual stockholders' meeting held after the transfer of the stock, the stockholders adopted a resolution reading as follows: "Motion made by R. T. Zillmer seconded by R. W. Griffith to approve the purchase of stock from H. M. Johnson by the company during 1940. Motion carried unanimously." Petitioner's basis of the stock for income tax purposes was $12,880.92, and the date upon which he acquired it was March 15, 1927. The business of the corporation has continued and increased steadily. In 1940 the stockholders and Board of Directors took the necessary action to increase the authorized capital stock from $50,000 to $100,000, and a stock dividend was declared consisting of two shares of common stock for every share then outstanding. The amount received by petitioner *131 in 1940 was not a distribution in partial liquidation but was simply consideration for the sale of a capital asset. Opinion KERN, Judge: The only question here is to what extent petitioner is taxable on the gain realized upon the disposition of corporate stock in the transaction described in the findings. If there was a distribution in partial liquidation, within the meaning of section 115 (i) of the Internal Revenue Code, he is taxable on 100 percent of his gain. If there was the sale of a capital asset, he is taxable only to the extent provided by section 117. The pertinent part of the definition of partial liquidation furnished by the statute is: As used in this section the terms "amounts distributed in partial liquidation" means a distribution by a corporation in complete cancellation or redemption of a part of its stock * * *. Section 19.115-5 (c) of Regulations 103, in explanation of the statute, says: A complete cancellation or redemption of a part of the corporate stock may be accomplished, for example, * * * by the complete retirement of any part of the stock, whether or not pro rata among the shareholders. It seems clear that when a corporation acquires part of its *132 own stock for the purpose of retiring it, and thus reducing its authorized capital, the transaction is a distribution in partial liquidation within the meaning of the statute, even though the form of the transaction is a sale of the stock by the shareholder to the corporation. Salt Lake Hardware Co., 27 B.T.A. 482; Benjamin R. Britt, 40 B.T.A. 790, affirmed 114 Fed. (2d) 10; L. B. Coley, 45 B.T.A. 405; Hammans v. Commissioner, 121 Fed. (2d) 4; Amelia H. Cohen Trust et al. v. Commissioner, 121 Fed. (2d) 689. However, the intention of the corporation to retire the stock must exist at the time of its acquisition before the rule above stated is applicable. Alpers v. Commissioner, 126 Fed. (2d) 58; Harold F. Hadley, 1 T.C. 496. In the instant case the petitioner wished to sell his stock in the corporation from which he was retiring as an officer. Because of a restriction attached to his stock he offered to sell it to the corporation and *133 the remaining stockholders before attempting to sell it elsewhere. This offer was accepted by the corporation with the consent of the other stockholders. The initiative in the transaction was taken by petition for the purpose of disposing of this stock, and not by the corporation for the purpose of retiring a part of its capital stock. We are of the opinion that the stock acquired from petitioner was never retired by the corporation, but that it was at all times available for re-issue. See Alpers v. Commissioner, supra. However, assuming for argument, that the unauthorized actions of the officer in charge of the corporate books and records amounted to an effective retirement of the stock, such a retirement took place after the sale of the stock by petitioner to the corporation and was not intended by the latter when the stock was acquired by it. On the authority of Alpers v. Commissioner, supra, and Harold F. Hadley, supra, we decide the issue presented in favor of petitioner. Decision will be entered under Rule 50.