Charles G. Yankey and Edna S. Yankey v. Commissioner. Estate of Robert H. Bradford, Deceased, T. A. Helling, Executor, v. Commissioner. T. A. Helling v. Commissioner. Mary G. Helling v. Commissioner. Ruth E. Bradford v. Commissioner.
Yankey v. Commissioner
Docket Nos. 2900, 2901, 2902, 2920, 2921.
United States Tax Court
1944 Tax Ct. Memo LEXIS 39; 3 T.C.M. (CCH) 1231; T.C.M. (RIA) 44377; November 23, 1944
*39 Charles G. Yankey, Esq., 724 Fourth National Bank Bldg., Wichita, Kans., for the petitioners. Roy C. Hormberg, Esq., for the respondent. DISNEY
Memorandum Opinion DISNEY, Judge: The cases above named in the caption, duly consolidated, involve income tax of the various petitioners and result in deficiencies determined, all as follows: Docket No.
Petitioner
Year
Deficiency
2900
Charles G. Yankey and Edna S. Yankey
1939
$ 975.59
2901
Estate of Robert H. Bradford, Deceased
1939
568.53
1940
469.54
2902
T. A. Helling
1939
1,434.65
1940
764.96
2920
Mary G. Helling
1940
137.06
2921
Ruth E. Bradford
1940
447.69.
The question is whether gains from disposition of corporate stock shall be considered in full, or only in part, in computing the income of the petitioners. [The Facts] The facts in major part were stipulated. We adopt the stipulations by reference and find the facts therein set forth. In addition the evidence of one witness was introduced, from which additional facts found are included in the following summary of the facts pertinent to discussion of the issue presented: The El Dorado Refining Co., a Kansas corporation. was organized in 1927 *40 as the successor of a Delaware corporation of the same name. The Delaware corporation in 1924 was in default to the extent of $676,000 on its debenture notes. A noteholders committee was formed and extended the time, accepting new notes with a mortgage upon the properties of the company, due in one year, as collateral. This obligation also went into default, a receiver was appointed, and the noteholders through their committee bid the property in and organized the present corporation, with capital assets of $695,000, representing the value of all stock, Including the preferred stock. The corporate charter provided, among other things, that annually certain of the corporate earnings, after dividends were paid upon preferred stock and upon common stock, should be paid to a sinking fund trustee, a bank in Wichita, Kansas, and that such trustee with such funds should offer to buy from all preferred stockholders, at not more than $100 per share; that preferred stock so acquired should be transferred in the name of the sinking fund trustee and should receive dividends the same as other preferred stock, which dividends should also be used to accquire, through bid and offer, additional preferred *41 stock; that if the preferred stock could not be purchased at $100 per share or less, such funds were to be used by the sinking fund trustee for the retirement of preferred stock by call, at $100 per share; that any part of the prefererd stock could be redeemed by the corporation through the sinking fund trustee by the deposit of $100 per share and any unpaid dividends; that any stock so redeemed should be cancelled and should not be reissued; that the shares of preferred stock acquired by purchase or redemption by the sinking fund trustee could not be reissued by the company; and, that as soon as all outstanding shares of the preferred stock had been acquired by the sinking fund trustee, they should at once be cancelled. The above charter provisions were printed upon the reverse side of the certificates of preferred stock. The amounts used at various times for retirement of the preferred stock were approximately the amounts required by the corporate charter. The company's cash account and assets were diminished by the amount of the value of the preferred stock retired. The petitioners acquired stock in the El Dorado Refining Co. at various times from December 12, 1937, to 1940. The *42 amount of such preferred stock as is involved herein was acquired from the petitioners by the sinking fund trustee in part about November 29, 1939, in part about April 12, 1940, and in part about September 30, 1940. The stock acquired by the sinking fund trustee about November 29, 1939, and about April 12, 1940 (consisting of a total of 1,350 shares), was surrendered in response to notices providing for submission of offers of sale of preferred stock, as provided by the corporate charter, and referring to the retirement of the stock, and, further, pursuant to corresponding resolutions of the directors of the corporation, referring to the retirement of the stock. The preferred stock acquired about September 30, 1940 (consisting of 384 shares), was surrendered by the petitioners to the trustee pursuant to a resolution of the board of directors of August 23, 1940, providing for retirement of preferred stock by redemption. On December 24, 1940, the directors of the company, by resolution, authorized the cancellation of all the preferred stock, which had been acquired from the petitioners and others, and it was all cancelled in 1940. The company deposited for the retirement of preferred *43 stock, assets in the form of cash with the sinking fund trustee from 1929 to 1940 in the total sum of $651,776.32, and during the years 1939 and 1940, $311,776.75. The capital and surplus of the company on December 31, 1940, but including the preferred stock retired, was $1,252,000. The assets and invested capital of the company were reduced by the value of the preferred stock retired during the years 1939 and 1940. The only issue presented is whether or not certain preferred stock, which was acquired by the Kansas corporation, El Dorado Refining Co., from each of the petitioners herein was acquired by sale, so that the provisions of section 117(b) of the Internal Revenue Code[1] (applicable to the taxable years), apply to limit the amount of capital gain taxable to the petitioners, or whether, on the other hand, it was acquired through a partial liquidation, within the purview of section 115(c) and (i) of the Internal Revenue Code, [2] so that despite the provisions of section 117, the gain is to be considered as short-term capital gain and taxable in full. *44 The Commissioner in each case determined that 100 per cent of the gain (as to the amount of which there appears to be no argument) was taxable because of holding that the retirement of the preferred stock constituted partial liquidation of the El Dorado Refining Co. Section 115(c) of the Revenue Act of 1938 provides that gains recognized upon amounts distributed in partial liquidation of a corporation shall be considered as short-term capital gains, that is, taxed 100 per cent; and section 115(i) defines amounts distributed in partial liquidation as: "a distribution by a corporation in complete cancellation or redemption of a part. of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock." The petitioners contend, in effect, that the facts here involved do not come within the purview of the statute, first, because the stock retired by offer and bid was, in effect, a purchase, eventual cancellation and retirement being dependent upon circumstances, and that the charter provisions required its transfer to a distinct entity. the sinking fund trustee, who held same for the benefit of the unacquired preferred stock; and, *45 second, that all of the preferred stock, not only that which was acquired by "purchase," but that which was acquired on September 30, 1940, by call, was acquired for retirement, pursuant to charter provisions, which, if carried out, could not reduce or impair the invested capital of the corporation, and therefore would not be liquidation. Petitioners further emphasize the fact that the preferred stock had its origin in debt and was merely a means of accomplishing the payment thereof. Stress is also placed upon the fact that the stock acquired by bid was not subject to cancellation until the sinking fund trustee had acquired all of the preferred stock, and that the retirement of the stock was not by virtue of any decision of the parties interested, but was pursuant to the corporate charter. Retirement, the petitioners point out, could only occur through profitable operations and then only out of a fixed portion of the earnings. It is noticeable at once that petitioners' point that the stock acquired by bid was not subject to cancellation until after the acquisition of all preferred stock by the sinking fund trustee, has no application to the stock (384 shares out of the total of 1,734 *46 shares herein involved) which was retired by redemption on September 30, 1940; this for the reason that the charter particularly provided that preferred stock was subject to redemption, and that all shares of preferred stock so redeemed should be cancelled and not be reissued. The 384 shares were, along with all the other preferred stock, cancelled in 1940. However, the stock acquired upon bids also, although not to be cancelled until after acquisition of all preferred stock, could not be reissued. In Hammans v. Commissioner, 121 Fed. (2d) 4, in holding that there was a partial liquidation within the statute here involved, the court stresses the fact that under the facts there the preferred stock should "be retired and * * * not be reissued," and says: * * * Though the corporation pending the completion of the legal formalities of recapitalization continued to carry the retired preferred shares as though they were treasury stock, they manifestly were unavailable for resale, and in equity the cancellation was complete. In our opinion, the stock herein involved was effectually retired when acquired upon bids, even though not then cancelled and in this *47 respect there is no real distinction between the stock redeemed and cancelled, and the stock acquired upon bid. The argument that the retirement of the stock was not pursuant to any discretion or tax-saving idea on the part of the directors, but in accord with charter provisions, and, further, that as to the stock acquired by the corporation by bid, there was a sale, does not bear out the petitioners' position. In L. B. Coley, 45 B.T.A. 405 (414), it was contended that a so-called sales price was the redemption price stated in the certificate of incorporation, plus accrued divdends. Though conceding that the transaction took the form of a sale, we concluded that there was partial liquidation. We called attention to Cohen Trust v. Commissioner, 121 Fed. (2d) 689, in which case also notice was sent out by the corporation that the company would buy for retirement the stock involved at a price which was the redemption price, as stated in the by-laws of the company. Therein the court answered the argument that the transaction should be regarded as a sale, in effect, by saying that in view of the statutory definition the answer *48 is unaffected by whether or not the transaction could in any view be deemed to be a sale. That the stock is, in form, purchased, is not determinative. Hill v. Commissioner, 126 Fed. (2d) 570. In Fry v. Helvering, 128 Fed. (2d) 737, the preferred stock was, as here, purchased out of the sinking fund set-up. We conclude that the form which the matter took herein and the fact that it was anticipated in the charter provisions, do not justify a conclusion that there was not partial liquidation. The Coley case, supra, further is answer to petitioner's argument here that partial liquidation requires a cessation or winding up of business activities. Salt Lake Hardware Co., 27 B.T.A. 482, 486; Commissioner v. Quackenbos, 78 Fed. (2d) 156; and Benjamin R. Britt, 40 B.T.A. 790, are there cited to that effect. We said in James Irvine, 46 B.T.A. 246 (261, 262), that even though there is expansion of capital in the entire transaction involving retirement of preferred stock, the retirement, particularly *49 where the stock is not subject to reissue, must be seen as partial liquidation. Though the question of liquidation is one of fact and any lack of intent to cease business is a fact to be considered, nevertheless, under the statutory definition furnished in section 115 (i) and the circumstances herein involved, we are not convinced that any such lack of intent demonstrates the absence of partial liquidation. (Indeed, there appears no proof in the record that the corporation was not intending to go out of business or to reduce its business.) Stern v. Harrison, 55 Fed. Supp. 687, cited by the petitioners, does not, we think, furnish compelling authority to the contrary. The facts, as petitioners herein admit have no similarity to those herein. We are unable, moreover, to agree with the petitioners that retirement of the preferred stock out of profits makes this a case of no partial liquidation, or that there was no reduction of the capital invested. In Benjamin R. Britt, supra, we were presented the argument that the retirement being from profits, with no change in capital structure, there was no partial liquidation. We *50 held otherwise. The capital invested by the holders of the preferred stock herein was retired, and as we there said, "This cancellation of this stock did reduce its capital." Intent is a material factor here. The intent so to retire it not only appears in the proceedings leading thereto, but had existed from the time of the corporate charter, for therein it was provided that they should not be reissued and should, when all had been acquired, at once be caneclled. It is clear that, although held by the sinking fund trustee in the meantime, such shares of preferred stock were not held as treasury stock, or subject to sale or other traffic by the petitioners. Therefore, cases such as William A. Smith, 38 B.T.A. 317, are not here applicable. After considering the authorities and all of the facts here involved, we hold that the surrender of the preferred stock by the petitioners was by way of partial liquidation and that 100 per cent of the gain realized by the petitioners upon such stock should be included in income. Decision in all docket numbers will be entered for the respondent. Footnotes
1. SEC. 117. CAPITAL GAINS AND LOSSES. * * * * *
(b) Percentage Taken Into Account. - In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net income: 100 per centum if the capital asset has been held for not more than 18 months; 66 2/3 per centum if the capital asset has been held for more than 18 months but not more than 24 months; 50 per centum if the capital asset has been held for more than 24 months. ↩
2. SEC. 115. DISTRIBUTIONS BY CORPORATIONS. * * * * *
(c) Distributions in Liquidation. - Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. Despite the provisions of section 117, the gain so recognized shall be considered as a short-term capital gain. * * * * *
(i) Definition of Partial Liquidation. - As used in this section the term "amounts distributed in partial liquidation" means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock.↩