Cummer Sons Cypress Company v. Commissioner.
Cummer Sons Cypress Co. v. Commissioner
Docket No. 110641.
United States Tax Court
1946 Tax Ct. Memo LEXIS 242; 5 T.C.M. (CCH) 201; T.C.M. (RIA) 46068; March 14, 1946
John W. Donahoo, Esq., and E. W. Mitchell, Esq., 801 Florida Nat'l Bank Bldg., Jacksonville, Fla., for the petitioner. R. E. Smith, Esq., for the respondent. HARLAN Memorandum Opinion
*243 HARLAN, Judge: Respondent determined a deficiency in the income tax of petitioner in the amount of $26,501.29 for the claendar year 1940. The issues are: Did the 4,997 shares of capital stock of The Cummer Company cost the petitioner the sum of $1,494,623.22, or $704,587.50? If the latter, is that portion of the total distributions of $816,334.81 received by petitioner in 1940 which exceeds the cost basis, or $111,747.31, or any part thereof, taxable to petitioner. Another issue involving dividends of $2,016 received by the petitioner in 1940 from the Antrim Iron Co. has been stipulated by the parties. Effect will be given to this stipulation upon settlement under Rule 50. [The Facts] The facts, with the exception of the testimony of one witness, have been stipulated, and are found accordingly. For the purpose of this opinion the following statement will suffice. The petitioner, a corporation organized in 1910 under the laws of the State of Florida, filed its income tax return for the year 1940 with the collector of internal revenue at Jacksonville, Florida. Its name on the date of its incorporation, W. W. Cummer & Sons Company, was changed in 1936 to Cummer Sons *244 Cypress Company. Its capital stock, which consisted of 5,000 shares of $100 par value at the time of its incorporation, was increased in 1912, by amendment to its charter, to 10,000 shares of the same par value. After its organization members of the Cummer family transferred to it stocks, bonds, real estate, timber lands, and other properties. The Cummer Company is a corporation organized under the laws of the State of Florida in May 1903. Its capital stock, which consisted of 3,000 shares of $100 par value at the time of its incorporation, was increased in March 1912, to 5,000 shares of the same par value. The Cummer Company at the date of its organization acquired certain timberlands known as the Dade City Block. The oriinal acquisition was 48,144 acres to which 2,500 acres were added April 19, 1904; 3,280 acres February 15, 1907, and miscellaneous small acreage up to March 1, 1913, making a total of 56,223 acres owned by said company on March 1, 1913, and having a cost as follows: Land
$ 27,916.06
Cypress timber
282,992.94
Pine timber
64,551.28
Hardwood timber
5,000.00
$380,460.28 From March 1, 1913 to January 10, 1920, no additional lands of any consequence *245 were purchased and none were sold. From 1902 to 1904, W. R. Steckert, an experienced timber cruiser of Gainesville, Florida, cruised not to exceed five percent of the cypress areas comprising timber considered by him to be representative and upon the basis of that cruise it was estimated that the entire 56,223 acres of land carried timber containing 94,883,000 feet (Doyle scale) of cypress. In the latter part of 1912 and early 1913, F. L. Conant, an experienced cruiser, cruised not to exceed five percent of the pine timber in Township 23, Range 22 and Township 24, Ranges 21 and 22, comprising timber considered by him to be representative, and upon that cruise it was estimated that the entire 56,223 acres of land contained 58,960,000 feet (Doyle scale) of pine. No hardwood timber was cruised. The charters of petitioner and the Cummer Company provided that they were organized for the purpose of buying, selling, owning, exchanging and developing lands; buying, selling, producing and manufacturing lumber and all articles manufactured from lumber; and operating and conducting saw mills and planing mills, and all business incident thereto. Prior to July 23, 1917, when petitioner acquired *246 part of the stock of the Cummer Company, the stock of both corporations was owned by members of the Cummer family. On July 22, 1917, the stock was held as follows: The
Cummer
Petitioner
Company
Shares
Shares
Mary Ada Cummer
2,500
1,042
Arthur G. Cummer
2,500
1,042
Waldo E. Cummer
2,500
1,042
Mabel C. Roe (daughter of
W. W. Cummer)
2,300
1,040
and
John L. Roe (her husband)
200
1
* Carrie E. Diggins
833
After the death of Carrie E. Diggins the 833 shares of stock of the Cummer Company formerly owned by her became the property of her estate of which Henry Knowlton and Fred C. Wetmore were appointed co-administrators. On October 11, 1916, Arthur G. Cummer, as secretary-treasurer of the petitioner, addressed a letter to Henry Knowlton in which he stated among other things: As you will see, our family owns five-sixths of the stock, and we are prepared to purchase the holdings of Aunt Carrie's Estate at a fair price now. I once had this matter up with Uncle Fred, and he seemed to think that, inasmuch as this investment was in the nature of a long *247 time one, he would be inclined to sell to us, but we were not in position to purchase then, so the matter was dropped. As it now stands, we expect to hold The Cummer Co. timber as an investment and will not operate or dispose of it until we have cut out the cypress owned by the W. W. Cummer & Sons Co. This will take a number of years, and we wish to be entirely fair with the girls and to give them an opportunity to sell their stock in The Cummer Company and to put the proceeds into some other investments which will bring them in a regular income. On March 28, 1917, Henry Knowlton wrote to Arthur G. Cummer as follows: I have been talking with Mr. Wetmore about the sale of the stock of the Estate of Carrie E. Diggins in The Cummer Company. I have gone over the matter quite carefully with Mr. Wetmore but have not presented the matter to the girls and believe it would be better if we covering all of the details in connection with the tract as well as the particulars surrounding the price. * * * On April 3, 1917, Arthur G. Cummer wrote a letter to Henry Knowlton in which he stated: You have a map of the property, detailed estimates of the timber, a schedule of the acreage, and *248 a memorandum showing the basis of the valuation and our offer for the stock using these figures. * * * As regards our offer; we used the following figures to determine the valuation - Five Dollars ($5.00) per M' Stumpage on Cypress as per estimates Two Dollars ($2.00) per M' Stumpage on Pine as per estimates Two Dollars ($2.00) per acre on Total Amount of land, as per schedule. This gave us the total value of the property, and we offer to purchase for cash the one-sixth interest held by the Estate. In our consideration of this matter, we have had in mind the interest of the girls, and have tried to be entirely frank in our statements. * * * On account of its remote location, it would not be advisable to cut this group before we cut other of our holdings which are much more accessible, which means that The Cummer Company's timber will naturally be held for a number of years yet, and it seemed to us that under these circumstances it would be only right for us to make it possible for the girls to realize on their investment, enabling them to put the funds into something else which would give them a quicker return. In making our figures on valuation of the property, we endeavored *249 to be entirely fair. Five Dollars as stated to you, $5.00 at Dade City is equivalent to over $7.00 per M Ft. at Jacksonville, because the rail rate from Dade City to the consuming markets is eight cents per hundred or $2.40 per M Ft. on the manufactured product, and, as you are aware, we are selling the Cummer Lumber Company our Cypress near Jacksonville for $6.00 per M Ft., which we certainly feel is the market price here. Carpenter & O'Brien Company sold to the Burton-Swartz Cypress Company their cypress in West Florida at $5.00 per M Ft.; this timber is much nearer the market than the Dade City holdings, and in addition, the Burton-Swartz Company pay on the cut of the mill in #2 Common and Better, and, therefore, take no chances on the estimates, which, in Cypress, are a considerable gamble, because of the defects, as I pointed out to you. The price of $2.00 per M Ft. on the Pine is more than it is worth, for, as you can see from the estimates, it is very scattering, and will be expensive logging. We put a price of $2.00 per Acre on all the lands, although they were not considered in making the purchase; but, it seems reasonable that the pine lands should have a value and we, *250 therefore, figured them in. We know, however, that the Cypress swamp lands have no value, as they cannot be drained, and it is impossible to get out the stumps and knees. So, we believe we have been liberal in our ideas of land values. Summing the whole matter up, our offer is absolutely fair, and certainly we would not make it this much if the stock was owned outside of the family. We cannot confirm the exact figures we made you, as you have our only copy of the exact estimates. I shall be glad to give you any further information you may care to have in reference to this, and trust the above is plain. On July 20, 1917, Arthur G. Cummer wrote his brother-in-law, John L. Roe, advising him that the Executors of the Carrie E. Diggins Estate had accepted the offer to purchase the stock. On July 23, 1917, the 833 shares of stock in The Cummer Company owned by the estate were transferred to the petitioner. On July 24, 1917, Arthur G. Cummer wrote Henry Knowlton and sent him a draft for $117,463.50 in payment of the 833 shares of stock. The purchase price was arrived at as follows: 94,833 M' Cypress at $5.00
$474,415.00
58,960 M' Pine at $2.00
117,920.00
56,223 Acres Land at $3.00
112,446.00
$704,781.00
1/6th, or about Estate's holdings
117,463.50
*251 On December 12, 1919, Mary Ada Cummer transferred the 1,042 shares of stock owned by her in The Cummer Company to the petitioner, receiving three of its notes for $48,974, each bearing interest of 6%, making a total of $146,922. These notes were paid in full by petitioner on May 3, 1920. On January 10, 1920, Arthur G. Cummer, Waldo E. Cummer and Mabel C. Roe and her husband, John L. Roe, transferred all of their stock in the Cummer Company (3,122 shares) to the petitioner. For this transfer the parties received from the petitioner cash, certificates of deposit, notes and bank credits aggregating $440,202. On January 9, 1920, a Special Meeting of the Board of Directors of the petitioner was held at Jacksonville, Florida. The minutes of this meeting read as follows: A special meeting of the Directors of the above company was held at the offices of the Company * * * for the purpose of acting upon the purchase of all the outstanding stock of the Cummer Company with the exception of three (3) shares - Present: A. G. Cummer, W. E. Cummer and J. L. Roe, being all the Directors. Motion made by W. E. Cummer and seconded by J. L. Roe was passed approving the following purchases of *252 shares of the Cummer Company. from A. G. Cummer
1041 shares
from W. E. Cummer
1041 shares
from Mabel C. Roe
1040 shares
from Mary A. Cummer
1042 shares at a price of $141.00 per share. (Underscoring supplied.) The books of the petitioner, since 1924, have shown the cost of The Cummer Company stock owned and held by petitioner to be as follows: Cost per
Total
Date
No. of
Share
cost
Acquired
Shares
per Books
per Books
July 23, 1917
883
$141.00
$ 117,463.50
Dec. 12, 1919
1,042
* 330.73
344,620.66
Jan. 10, 1920
3,122
* 330.73
1,032,539.06
$1,494,623.22
On December 12, 1919 and January 10, 1920, the average value per acre of the 56,223 acres of timberlands owned by The Cummer Company, exclusive of the timber thereon, was $3 per acre, or $168,669. On these dates it was estimated that there were 133,000,000 feet of cypress and 55,000,000 feet of pine by Doyle scale of measurement on the entire 56,223 acre tract. For the period July 1, 1919 to June 30, 1920, the Cummer Company filed a capital stock tax return, including a statement of Area
Acres
Location
Species
1040
(T24R22)
Cypress
(T25R22)
400
(T24R22)
Pine
*253 King also cruised additional acres not previously cruised prior to 1923-1924 and estimated that there were 24,354,000 additional feet of cypress and 47,135,000 additional feet of pine. The Cummer Company in 1923 and up to July 16, 1624, cut over portions of the Dade City Block and found that estimates of 3,450,000 feet of pine yielded 3,880,011 feet or a 12.69% overrun and estimates of 11,319,750 feet of cypress yielded 13,922,791 feet or a 22.9% overrun. The Cummer Company on October 7, 1924, submitted a brief sworn to by W. E. corporate activities and a condensed balance sheet as of June 30, 1919. In the balance sheet the company reported a value for real estate and timber per its books of account of $1,131,669, other assets of $836, accounts payable of $54,893.85, capital stock of $100,000, surplus of $577,611.15, and reported that these amounts also represented the "fair value" of these items. On September 28, 1920, the Commissioner of Internal Revenue addressed a letter to The Cummer Company in which he stated that a capital stock tax, computed as follows, was due from it: Fair value
$1,077,611.15
Deduction
5,000.00
Fair value in excess of $5,000
$1,072,611.15
Tax at $1 for each full $1,000
1,072.00
*254 The collector of internal revenue issued a notice and demand in the amount of $1,072 before November 8, 1920, and this amount was paid by The Cummer Company. The value of $1,131,669 for real estate and timber was determined by the Cummer Company as follows: 56,223 acres of land at $3.00
$ 168,669.00
133,000 M ft. cypress at $6.00
798,000.00
55,000 M ft. pine at $3.00
165,000.00
$1,131,669.00
Between July, 1923, and July, 1924, The Cummer Company employed Frank King to estimate certain areas of 40 to 120 acres each located one mile apart for a distance of 12 miles. These estimates were checked by the taxpayer with the original estimates of Steckert and Conant as follows: Percent
Feet Original
King Feet
Additional
Cruises
Cruise
by King
10,510,000
10,644,900
1.28%
1,200,000
1,258,175
4.9% Cummer, President, wherein Steckert expressed the opinion as of September 22, 1924, that there were 20,000,000 feet Doyle scale of hardwoods on the Dade City Block and that the total estimated quantities of cypress and pine as disclosed by the several cruises should be as follows: Species
Cruiser
Feet
Cypress
Steckert
132,864.300
Cypress
King
24,354,000
157,218,300
Pine
Conant
54,935,000
Pine
King
47,135,000
102,070,000
*255 Steckert further expressed the opinion that logging and lumbering operations would overrun the cruisers' estimates by 10% for pine and by 20% for cypress, resulting in total, including overrun, of 188,661.960 feet of cypress and 112,277,000 feet of pine. On October 9, 1924, The Cummer Company and the Timber Section of the Bureau of Internal Revenue determined that the March 1, 1913 value of the timber and lands of The Cummer Company was $1,656,299.15, which value was made up of cost and appreciation in value of said properties accrued prior to March 1, 1913, and was computed as follows: Land
55,832.13 acres at $3.00
$ 167,496.39
Cypress Timber
188,661.960 feet at $6.00
1,131,971.76
Pine Timber
112,277.000 feet at $3.00
336,831.00
Hardwood
20,000,000 feet at $1.00
20,000.00
Total
$1,656,299.15
In computing its yearly deduction from gross income for depletion, The Cummer Company used the aforesaid March 1, 1913 value of $1,656,299.15 for the period March 1, 1913 to January 1, 1940, and the total depletion deduction determined and allowed amounted to $1,027,262.84. The depletion deduction determined and allowed for the year 1940 was $74,123.15. The *256 total depletion allowed for the period March 1, 1913 to January 1, 1941, was $1,101,385.99. During the years 1934, 1937, 1939 and 1940 The Cummer Company made the following distributions to Cummer Sons Cypress Company, the petitioner, after earnings and profits for the respective years and earnings and profits accumulated prior to or subsequent to February 28, 1913, had been distributed, as defined in Sections 115 (a) (1) and (2) of the Internal Revenue Code: Year
Amount Distributed
1934
$ 58,823.44
1937
460,567.34
1939
115,000.00
1940
181,944.03
Total
$816,334.81
All of said distributions were made from the March 1, 1913 value of the timber and lands owned by The Cummer Company and from the said sum of $1,101,385.99 representing Reserve for Depletion as of December 31, 1940. Depletion on cost; realized appreciation on March 1, 1913 value of timber, total depletion sustained on timber, realized appreciation distributed by The Cummer Company during the years 1934, 1937, 1939 and 1940, and distributions on capital stock, are as follows: Realized
Total depletion
Depletion on
Appreciation on
sustained
Cost (Timber)
3/1/13 value
on timber
Pine
$ 95,927.26
$270.785.68
$ 366,712.94
Hardwood
2,251.85
4,610.08
6,861.93
Cypress
255,429.83
472,381.29
727,811.12
Total
$353,608.94
$747,777.05
$1,101,385.99
Add: Appreciation on land realized from sales
$ 20,218.16
Total Realized Appreciation distribution by The
Cummer Company
$767,995.21
Add: Distribution charged to capital stock account
48,339.60
Total distributions by The Cummer Company to
petitioner
$816,334.81
*257 At the time of the 1934 and 1937 distributions, the board of directors of The Cummer Company held special meetings and passed resolutions authorizing distributions from surplus from realized appreciation. There are no minutes of action taken by the directors or stockholders of The Cummer Company pertaining to the distributions made by it in the years 1939 and 1940. There are no minutes authorizing a partial or complete liquidation of the company or the cancellation or redemption of its stock and the stock certificates of the Company have not been endorsed showing any payment thereon. The Cummer Company and the petitioner keep their accounts and file their respective income tax returns on the accrual basis. The respondent determined that the cost to petitioner of the 4,997 shares of stock of the Cummer Company was $704,587.50. or $141 per share; that the distributions from the Cummer Company exceeded the cost by $111,747.31, all of which was received by petitioner in 1940; and that this amount was taxable 100 percent to it in 1940 as capital net gain. Petitioner contends (1) that the cost of the Cummer Company stock was greatly in excess of the distributions of $816,334.81 *258 received by it from the Cummer Company during the years 1934, 1937, 1939 and 1940, and, therefore, no taxable gain was realized; and (2) in the alternative, that even if the amounts distributed did exceed the adjusted basis of the Cummer Company stock, they nevertheless constituted tax free distributions to the extent of $767,995.21 because this amount was distributed out of earnings and profits representing increase in value of property acquired prior to March 1, 1913. Petitioner concedes that $141 per share represented the cost to it of the 833 shares acquired from the Estate of Carrie E. Diggins in 1917. It urges, however, that subsequent to the purchase of these 833 shares, those members of the Cummer family who were the sole stockholders of The Cummer Company ascertained that the value and quantity of the timber owned by it was greater than the value and quantity thought to be owned at the time of the 1917 transaction; that the stockholders received consideration less than the known value of the stock when they transferred it to petitioner in 1919 and 1920; and that the difference between the value and the consideration paid them was properly credited to paid-in surplus on its *259 books and the full value debited as the cost of the stock acquired on December 12, 1919 and January 10, 1920. [Opinion] In support of this contention petitioner cites Article 837 of Regulations 45; Steinbach Company, 3 B.T.A. 348; Stuts Motor Car Co. of America v. United States, 80 Fed. (2d) 623, all of which involve the application of the "invested capital" provisions of the Revenue Acts of 1917, 1918 and 1921. "Invested capital" was defined therein to include, among other things, paid-in surplus, and the Commissioner's regulations provided that where tangible property was paid in by a stockholder to a corporation as a gift or at a value definitely known or accurately ascertainable as of the date of such payment clearly and substantially in excess of the cash or other consideration paid by the corporation therefor, then the amount of the excess shall be deemed to be paid-in surplus. This definition of "invested capital", and cases applying it, are in no way controlling or pertinent to the issue before us. Petitioner's basis for gain or loss upon the stock acquired by it from the stockholders of the Cummer Company must be determined under the provisions *260 of section 113 I.R.C. The pertinent provisions of this section are the following: SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS. (a) Basis (Unadjusted) of Property. - The basis of property shall be the cost of such property; except that - * * * * *
(4) Gift or transfer in trust before January 1, 1921. - If the property was acquired by gift or transfer in trust on or before December 31, 1920, the basis shall be the fair market value of such property at the time of such acquisition. We are not convinced that a gift of any part of the value of the 4,164 shares of stock of the Cummer Company transferred by the stockholders to petitioner in 1919 and 1920, was made or intended to be made by them. None of the transferring stockholders appeared as witnesses. Two of them, and the husband of a third, were, however, present at the meeting of the board of directors of petitioner on January 9, 1920, and voted in favor of the resolution adopted that petitioner purchase the 4,164 shares at a price of $141 per share. We think it quite reasonable to assume that if anything other than a purchase and sale were intended, they would have had some mention of it *261 incorporated in the resolution. Arthur G. Cummer stated in 1917 that the price of $141 per share was "absolutely fair." That is the price at which the stock was purchased by petitioner in 1919 and 1920. The fact that the stockholders might have had some knowledge that the quantity of timber was greater in 1919 and 1920 than what they thought it was in 1917, and that if a sale had been made in 1919 and 1920 a greater price per thousand feet might have been received, does not establish a gift of any part of the value of the stock transferred in the absence of some showing that the transferring stockholders in fact intended to make such a gift. Proof of donative intent is lacking, and the evidence preponderates in favor of a sale by the stockholders of the 4,164 shares of the Cummer Company stock to petitioner in 1919 and 1920 for $141 per share. Petitioner's cost basis for these shares, and the 833 previously purchased, is $704,587.50, as determined by the respondent. The second contention of the petitioner, in the alternative, is that regardless of the cost basis of the Cummer Company stock, $133,604.43 of the total distributions of $181,944.03 in 1940 constituted nontaxable income *262 as it was paid out of increase in value of timber and lands accrued prior to March 1, 1913 and realized thereafter; and that the balance of $48,339.60, paid by the Cummer Company out of capital, was taxable. The petitioner urges that Ernest E. Blauvelt, et al., 4 T.C. 10, is controlling. In the cited case, Ernest E. Blauvelt and others, some time after March 1, 1913, purchased shares of stock of a New Jersey Corporation which was incorporated on June 8, 1895, and engaged in the purchase, sale, and improvement of land in the Republic of Mexico. In 1940 this corporation had no earnings or profits accumulated after February 28, 1913, within the meaning of section 115 (a) (1) I.R.C., and had no earnings or profits accumulated before March 1, 1913. It had no earnings or profits during 1940 within the meaning of section 115 (a) (2) I.R.C.; instead, it had a loss computed without regard to profits representing appreciation in value of property accrued before March 1, 1913. During the year 1940, it made certain distributions to its stockholders out of earnings or profits representing increase in value of property accrued before March 1, 1913, and *263 realized thereafter, within the meaning of section 115 (b) I.R.C. "No part of the distributions was in complete or partial liquidation of the shares of stock of the corporation, or dividends." In returns filed by the petitioners, as stockholders, amounts to represent the excess of the distributions over the adjusted bases of the stock were reported as gain resulting from the exchange of a capital asset held more than two years and 50 percent thereof was taken into account in computing the net income. The respondent included in the income of the petitioners the amount by which all the distributions received by them exceeded their adjusted bases for the stock. The grounds for his action were that the distributions, having been paid out of appreciation in value of real estate accrued before March 1, 1913, the excess was taxable as gain under section 22 (a), I.R.C., as interpreted in section 19.111-1 of Regulations 103. In their petitions the petitioners alleged that no part of such excess constituted taxable income and that they overpaid their income tax liability for 1940. This Court, after reviewing the legislative history of sections 115 *264 (b) and (d), found that the petitioners were not taxable upon the amounts by which the distributions exceeded their adjusted bases for the stock, and that, to the extent Section 19.111-1 of Regulations 103 provided to the contrary, it was invalid. Respondent contends that the Blauvelt case, supra, is not controlling and is distinguishable upon its facts in that the distributions which the petitioner received from the Cummer Company were paid by that corporation in partial liquidation, whereas in the Blauvelt case, the parties stipulated that "No part of the distribution was in complete or partial liquidation of shares of stock of the corporation, or dividends." Respondent urges that petitioner has offered no evidence to prove that the Cummer Company was not in partial liquidation when it made the distributions here involved; that its major asset was timber - a wasting asset; that of the 320,938 M ft. of timber on hand March 1, 1913, 219,451 M ft. were cut and sold by the end of 1940; that it sold 8,865.98 acres of its timberlands during this same period; and that, as stipulated, "From March 1, 1913 to January 10, 1920 no additional lands of any consequence were purchased * * *" by *265 it. Section 115 (c), I.R.C. provides as follows: Distributions in Liquidation. - Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. * * * In the case of amounts distributed (whether before January 1, 1939, or on or after such date) in partial liquidation (other than a distribution to which the provisions of subsection (h) of this section are applicable) the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits. * * * The respondent determined that "Partial liquidating dividends were received on this [Cummer Company] stock in the years 1934, 1937, 1939 and 1940 in the total amount of $816,334.81 * * *." He makes no contention, however, that the petitioner, during the taxable year 1940, received any *266 distributions in complete liquidation of the Cummer Company, and the evidence would not support such a contention if made. If the distributions received by the petitioner were liquidating distributions, it must be because they were "amounts distributed in partial liquidation". This term is defined in section 115(i), I.R.C. to mean "a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock." There can be a distribution in partial liquidation even though there is no intent to completely liquidate a corporation or cease business. John K. Beretta, et al., 1 T.C. 86, 95; Commissioner v. Quackenbos, 78 Fed. (2d) 156; Commissioner v. Cordingly, 78 Fed. (2d) 118; Benjamin R. Britt, 40 B.T.A. 790, 796, 797; aff'd, 114 Fed. (2d) 10. "The statute applies, not to a distribution in liquidation of the corporation or its business, but to a distribution in cancellation or redemption of a part of its stock." Hamilton Allport, 4 T.C. 401. The Cummer Company, *267 in 1923, started to cut timber in substantial quantities from its 56,223 acres of timberlands. During the period 1934 to 1940 inclusive, it cut an average of 13,000,000 ft. of timber per year, its outstanding year being 1937 when over 25,000,000 ft. were cut. As of December 31, 1940, it had 101,487,124 ft. of timber on hand and uncut. Even if it be assumed that liquidation of business is a material factor in determining the nature of the distributions made by the Company during this period, we do not see any justification for concluding that the Cummer Company was liquidating its business. The Cummer Company was engaged in the business of cutting timber, and, as petitioner points out on brief, if the fact that such a company is cutting its timber and selling it is indicative of liquidation, then every lumber company so engaged would be in liquidation. The statute makes the decisive factor, however, not liquidation of a business, but whether the distributions were in cancellation or redemption of the corporation's stock. There are no minutes of action taken by the directors or stockholders of the Cummer Company pertaining to the distributions made by it in the years 1939 and 1940, and *268 no minutes authorizing a partial or complete liquidation or cancellation or redemption of all or a part of its stock. Moreover, its stock certificates contain no endorsement showing any payment thereon. Its income tax returns disclose that its liability for outstanding capital stock was $378,392.34 during each of the years 1934, 1937, 1939 and 1940. At the time of the 1934 and 1937 distributions, the board of directors of the company adopted resolutions that it declare and pay the amounts distributed in those years from "Surplus from Realized Appreciation", and in the minutes of the meeting of December 22, 1937, it was pointed out that "a distribution from this source is not subject to income tax when received by the stockholder." The distributions totalling $181,944.03 in 1940, as well as those of $58,823.44 in 1934, $460,567.34 in 1937, and $115,000 in 1939, were all charged to an account captioned "Surplus from Realized Appreciation", and there were credited to this account moneys realized from pre-March 1, 1913 increase in value of property. Even in the absence of corporate minutes recording the nature of the distributions made by the Cummer Company to petitioner in 1940, we *269 are convinced that they, and the distributions made in 1934, 1937 and 1939, were made in the ordinary course of business and were not in cancellation or redemption of a part of the stock of the Cummer Company. They were not, therefore, distributions in partial liquidation within the intendment of the statute. This conclusion eliminates the only feature relied upon by the respondent to distinguish the facts of the Blauvelt case from those here involved. Both parties agree that of the distributions of $181,944.03 in 1940, the sum of $80,339.60 was paid by the Cummer Company out of capital. The latter sum is computed as follows: Surplus from realized appreciation
per books of the Cummer Company
Jan. 1, 1940
$ 83,939.65
Add: Credit to said account from
sales of timber in 1940
49,664.78
Total realized appreciation (1940)
$133,604.43
Total distributions 1940
181,944.03
Excess charged to capital stock ac-
count
$ 48,339.60
That part of the 1940 distributions, $133,604.43, paid from increase in value of property accrued prior to March 1, 1913, and realized thereafter, is nontaxable. Ernest E. Blauvelt, et al., supra. The remainder, $48,339.60, paid *270 out of capital, is taxable. Decision will be entered under Rule 50. Footnotes
*. Mrs. Carrie E. Diggins (daughter of Jacob Cummer) died October 30, 1914.↩
*. Based upon value at dates of acquisition in 1919 and 1920.↩